IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID JEROME PARKER, )<br>AIS #124838, )<br>  )<br>  Plaintiff, )<br>  )<br>  v. )<br>  )<br>SIDNEY WILLIAMS, et al., )<br>  )<br>  Defendants. ) | CIVIL ACTION NO. 2:02-CV-1236-F<br>WO |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION AND PROCEDURAL HISTORY**

David Jerome Parker ("Parker"), a state inmate, filed the complaint in this 42 U.S.C. § 1983 action on November 5, 2002.[1] In this complaint, Parker names Sidney Williams, Nancy McCreary and Gladys Riddle, members and a former member of the Alabama Board of Pardons and Paroles, Ronald Cavanaugh, Treatment Director for the Alabama Department of Corrections, Michael Haley, former commissioner of the Alabama Department of Corrections, and Cheryl Price, warden of Bibb Correctional Facility, as defendants in this cause of action. The plaintiff complains of actions related to denials of parole which occurred from 1989 until the filing of this complaint. He seeks declaratory and injunctive relief for the alleged violations of his constitutional rights.

---

[1] Although the complaint was stamped "filed" by the Clerk of this court on November 7, 2002, the plaintiff certified that he executed the complaint on November 5, 2002. The law is well settled that a pro se inmate's complaint is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Parker] signed it . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). In light of the foregoing, the court considers November 5, 2002 as the date of filing.

The defendants filed special reports and supporting evidentiary materials addressing the plaintiff's claims for relief. The court deems it appropriate to treat the special reports as motions for summary judgment. *See Order of January 8, 2003 - Court Doc. No. 11*. This case is now pending before the court on the defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof and the responses in opposition filed by the plaintiff, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II. FACTS

On October 31, 1979, the Circuit Court of Tuscaloosa County, Alabama imposed convictions upon the plaintiff for one count of second degree burglary, multiple counts of first degree burglary, seven counts of rape, eight counts of robbery and three counts of assault with intent to rob. *See Correctional Defendants' Exhibit C - Inmate Summary Sheet of David Jerome Parker*. The trial court sentenced Parker to thirteen consecutive life sentences and seventeen concurrent life sentences for these convictions. *Id*. Parker has been considered for parole on several occasions but has been denied release after each parole consideration hearing.[2] The undisputed evidence before the court establishes that upon denying parole in 1992 the parole board remarked that Parker "needs sex offender treatment." *Plaintiff's Exhibit B*. However, there is nothing before the court to indicate that this constituted the sole reason for the parole board's adverse decision nor is there any evidence which suggests that upon receipt of such treatment the board would consider Parker entitled to parole.

---

[2]The documents filed by the parties establish that parole consideration occurred in April of 1992, April of 1994, May of 1997 and May of 2002. The plaintiff further advises that his next parole consideration hearing is scheduled for May of 2007.

2

The record does, however, demonstrate that all subsequent denials of parole occurred due to Parker's extensive criminal record and because Parker failed "to persuade [the] Board that he is 'likely to live and remain at liberty without violating the law' and that his release is compatible with society's welfare." *December 23, 2002 Special Report of the Parole Defendants* at 7.

### III.  STANDARD OF REVIEW

In order to survive the properly supported motions for summary judgment submitted by the defendants, the plaintiff is required to produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, the plaintiff has failed, after being given ample opportunity to do

so, to establish that there is a genuine issue as to a material fact in order to preclude summary judgment.

## IV.  DISCUSSION

Parker asserts that the parole defendants violated his constitutional rights in denying him parole and scheduling his parole consideration date at a five year set-off.  He further complains that the correctional defendants refuse to provide him with sexual offender treatment which is essential to his release on parole.  These claims entitle the plaintiff to no relief from this court.

### A.  Claims Barred by the Statute of Limitations

Upon review of the pleadings filed in this case, it is clear that those claims arising from adverse parole decisions and any lack of sexual offender treatment which occurred from 1989 until November 4, 2000 are barred by the statute of limitations.

> Federal courts must look to state law to determine, first, what statute of limitations is applicable, and second, whether that limitations period is tolled.  *Whitson v. Baker*, 755 F.2d 1406. 1409 (11th Cir. 1985).  Selection of a limitations period for §1983 actions changed several times [between 1985 and 1989].  Alabama law, however, provides that the applicable limitations period is the one in effect when the claim is filed, not when the cause of action arose.  *Tyson v. Johns Manville Sales Corp.*, 399 So.2d 263, 269-70 (Ala.1981).  It is undisputed that §1983 claims were subject to a two year limitations period at that time.  *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483-84 (11th Cir. 1989) (*Jones II*).

*Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994).

At the time Parker filed the instant complaint, the proper statute of limitations for § 1983 actions was two years.  *Owens v. Okure*, 488 U.S. 235, 249-250 (1989) (Supreme Court rejects the *Jones I* approach to the selection of the proper statute of limitations for section 1983 suits and

determines that the proper statute of limitations for such actions is the forum state's general or residual statute of limitations for personal injury actions.); *see also Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992). In Alabama, the general statute of limitations for personal injury actions is two years. *Ala. Code* § 6-2-38(l).

Several of the actions about which the plaintiff complains occurred from an unspecified date in 1989 until November 4, 2000. That portion of the tolling provision which had previously applied to convicted prisoners was rescinded by the Alabama legislature on May 17, 1996. *See Ala. Code* § 6-2-8(a) (1975, as amended). Consequently, the statutory tolling provision provides the plaintiff no means of obtaining relief on those claims presented in the instant complaint which arose from 1989 until November 4, 2000. In light of the foregoing, the court concludes that the applicable limitations period expired on the aforementioned claims anytime from May of 1998 until November 4, 2002.

Unquestionably, the statute of limitations is usually a matter which may be raised as an affirmative defense. The court notes, however, that in an action proceeding under section 1983, it may consider, *sua sponte*, affirmative defenses that are apparent from the face of the complaint. *Clark v. Georgia Pardons and Parole Board*, 915 F.2d 636, 640 n.2 (11th Cir. 1990); *see also Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990). "[I]f the district court sees that an affirmative defense would defeat the action, a section 1915[(e)(2)(B)(i)] dismissal is allowed." *Clark*, 915 F.2d at 640. "The expiration of the statute of limitations is an affirmative defense the existence of which warrants dismissal as frivolous. *See Franklin* [*v. State of Oregon*], 563 F.Supp. [1310] at 1330, 1332." *Id*. at n.2. Dismissal of a claim as frivolous is allowed "at any time" during the course of the proceedings. 28 U.S.C. § 1915(e)(2)(B)(i).

5

Under the facts apparent from the face of the present complaint, the plaintiff has no legal basis on which to proceed with respect to claims which arose from 1989 until November 4, 2000 as these claims were brought more than two years after the actions about which he complains accrued. The statutory tolling provision does not preserve this cause of action on such claims. Consequently, the plaintiff's claims related to actions which occurred from 1989 until November 4, 2000 are barred by the applicable statute of limitations and, as such, are deemed frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). *See Clark v. Georgia Pardons and Parole Board*, 915 F.2d 636 (11th Cir. 1990); *see also Neitzke v. Williams*, 490 U.S. 319 (1989).[3] Summary judgment is therefore due to be granted in favor of the defendants on such claims.

## B. Parole Set-Off

1. <u>The Ex Post Facto Claim</u>. Parker maintains that the parole defendants violated the Ex Post Facto Clause of the Constitution when they retroactively applied relevant administrative rules, which altered the frequency of parole consideration dates from every three years to every five years, in setting his two most recent parole consideration dates.     The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision. *Garner,* 529 U.S. at 255. Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made

---

[3]Although *Neitzke* interpreted the provisions of 28 U.S.C. § 1915(d), the predecessor to § 1915(e)(2), the analysis contained therein remains applicable to the directives contained in the present statute.

on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350.

In *Garner v. Jones*, *supra*, the Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years for Georgia prisoners violated the Ex Post Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstance or the discovery of new, relevant information. *Garner,* 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *see* § 15-22-26*, Ala.Code 1975*, and when parole will be granted, *see* § 15-22-24(a)*.* This discretion does not displace the protections of the Ex

Post Facto Clause.  *Garner,* 529 U.S. at 253.  Applicable state law also requires that the Board consider the public interest in every case.  § 15-22-26, *Ala.Code 1975.*

The change in frequency of parole consideration dates is found in two regulations.  Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles* (2001), vests the Board with discretion to determine how often to set an inmate's date for reconsideration, with five years being the maximum.  Article 2, § 8, provides that, if the Board "scheduled the next consideration more than three years after denial, the Committee may consider earlier scheduling, but such review shall not begin earlier than twenty-four months after the Board has denied parole."  The opportunity for an expedited parole review is likewise available to qualified inmates.  Article 2, § 1, provides that "[s]uch a rescheduling may be granted . . . for good cause shown such as a prognosis of imminent death or a recommendation from the prosecuting attorney or the sentencing judge, and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the prison rules."  Thus, the Board's rule changes are designed for the better exercise of its discretion.  *See Garner*, 529 U.S. at 254-55.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon the plaintiff.  Specifically, prior to this change Parker "never was assured of any probability that he would be released before his sentence is complete."  *December 23, 2003 Special Report of the Parole Defendants* at 12.  Additionally, two years after a denial of parole Parker has the opportunity under the current regulation to "submit information about changed circumstances bearing on his suitability for parole, and he could be scheduled for consideration at an earlier date.  It is even possible [with the appropriate presentation of evidence] that he would be scheduled for consideration in less than three

years." *Id*. at 13. Thus, even if risk of an increased term of incarceration develops in Parker's case, he may, upon a showing of "circumstances bearing on his ability to succeed on parole," seek an earlier review before the 5-year interval expires. *See* Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles* (2001).

The plaintiff has presented no evidence nor is the court aware of any such evidence which demonstrates that the regulation at issue creates a significant risk of increased punishment for Parker. Moreover, the plaintiff possesses the ability to petition for an earlier parole consideration date. Based on the foregoing, the court concludes that the change in Alabama law did not lengthen the plaintiff's actual term of imprisonment. Thus, the ex post facto claim does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. *Garner*, *supra*. The defendants are therefore entitled to summary judgment on this claim.

2. <u>The Due Process Claim</u>. With respect to Parker's claim that scheduling his parole reconsideration hearing five years after a prior review is a denial of due process, he fails to raise a claim rising to the level of a constitutional violation. The law is well settled that the Constitution does not guarantee parole nor does the Alabama parole statute create for Alabama prisoners a protected liberty interest in the expectation of parole. *Ellard v. Alabama Board of Pardons and Paroles*, 824 F.2d 937, 941-942 (11th Cir. 1987). Consequently, the plaintiff's assertion that he is entitled to a parole review before the scheduled review date does not establish a violation of due process.

### C. THE 2002 DENIAL OF PAROLE[4]

---

[4] The court previously determined that those claims challenging the 1992, 1994 and 1997 decisions to deny parole are barred by the statute of limitations. *Infra*. at 5-7. Thus, this section of the Recommendation is

9

Parker asserts that the parole defendants improperly denied him parole. As noted in the preceding discussion, an inmate confined in the Alabama prison system does not possess a liberty interest in being granted parole that is protected by the Due Process Clause. *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard v. Alabama Board of Pardons and Paroles*, 824 F.2d 937, 941-942 (11th Cir. 1987); *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). Thus, the procedural due process protections of the Fourteenth Amendment do not apply to the parole decision making process. *See Ellard v. Alabama Board of Pardons and Paroles*, 824 F.2d 937 (11th Cir. 1987); *Thomas v. Sellers*, 691 F.2d 487, 488-489 (11th Cir. 1982). Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489.

Prior to the parole consideration initially scheduled for May of 2000, the Alabama Board of Pardons and Paroles requested a mental health update on the plaintiff. Apparently, upon receipt of this report and based on the new regulations applicable to parole consideration dates, the parole board set-off Parker's parole consideration for an additional two years, until May of 2002. The relevant portion of the report compiled by the psychologist as a result of his examination of the plaintiff reads as follows:

> Inmate Parker . . . was oriented to time, person, and place. . . . Thought processes appear to be in tact and no overt indications of psychological malfunctioning were noted. Nor was any treatment for Mental Illness noted in his medical files. Prior assessment placed him in the low average to borderline level of intellect functioning. At this time . . . he appears to be functioning at the average range of intelligence. . . . Results of the Hare PCL-R assessment reveals Psychopathology as being a definite

---

limited to addressing the denial of parole which occurred in May of 2002.

trait of inmate Parker's personality.[5]  In discussing his offense inmate Parker indicated many of the rapes were "Crimes of Opportunity."  He planned to burglarize the places and he was doing the burglaries to obtain money to buy alcohol and drugs. . . .

. . . He appeared to have little or no empathy for the victims.  The Hare PCL-R assessment suggests that inmate Parker is a high risk for acting out in a violent manner.

Inmate Parker . . . established a life style of criminal behavior prior to his arrest . . . [and] he lacked the skills, both functional, and socially to maintain a crime free lifestyle. . . .  Psychological data suggest that inmate Parker is a high risk for recidivism.

* * *

. . . [A]s he is such a high risk for recidivism, he is more than likely to be unsuccessful while on parole

*Correctional Defendants' Exhibit D - May 9, 2000 Mental Health Update* at 1-2 (footnote added).

The parole defendants maintain that they denied parole to the plaintiff based on his extensive criminal record and because he failed "to persuade [the] Board that he is 'likely to live and remain at liberty without violating the law' and that his release is compatible with society's welfare." *December 23, 2002 Special Report of the Parole Defendants* at 7.  The parole board's consideration of the serious nature of an inmate's criminal convictions and the number of such convictions when determining the inmate's suitability for release on parole is rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526

---

[5]The traits generally associated with a psychopath or someone with antisocial personality disorder are superficial charm, great sense of self-wroth, pathological lying, conning and manipulative behaviors, lack of remorse or guilt, emotionally shallow, devoid of empathy for others, parasitic, impulsive, irresponsible, early behavioral problems and diverse criminality.  It is clear Parker exhibits some of these traits.

(11th Cir. 1988). In light of the foregoing, the court concludes that the defendants reliance on the number and nature of the crimes for which the plaintiff was convicted was "not arbitrary and capricious, but reasonable and appropriate." *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986).

To the extent Parker challenges the parole defendants' failure to provide him with specific reasons for the denial of parole, he is likewise entitled to no relief. Since inmates in Alabama have absolutely no liberty interest in being paroled, *Monroe*, 932 F.2d at 1441; *Ellard*, 824 F.2d 941-942; *Thomas*, 691 F.2d at 489, there is no constitutional requirement that written reasons for denial be given. *See O'Kelley v. Snow*, 53 F.3d 319, 322 (11th Cir. 1995) (Since the plaintiff "had no constitutional right to procedural due process protections, . . . [he] therefore . . . had no right to an explanation for departure from the parole guidelines."); *see, e.g., Irving v. Thigpen*, 732 F.2d 1215 (5th Cir. 1984). Moreover, the Alabama parole statutes do not require that the plaintiff be furnished with reasons as to why the parole board decided to deny parole. Thus, the failure to provide such information does not implicate the Constitution.

### D. SEXUAL OFFENDER TREATMENT

Although Parker advises that he is "not severely and acutely mentally ill[,]" *Plaintiff's Exhibit A - Affidavit of David Jerome Parker* at 2, he complains that the correctional defendants have failed to provide him with adequate mental health treatment necessitated by his status as a sexual offender and his exhibiting psychopathic personality traits. The evidentiary materials contained in the record demonstrate that throughout his confinement Parker has been provided access to treatment through Sex Offenders Anonymous ("SOA") and Alcoholics Anonymous ("AA")/Narcotics Anonymous ("NA"). *See Correctional Defendants' Exhibit E.* Additionally, Parker completed several treatment programs offered by the Alabama Department of Corrections including the Substance Abuse Program

("SAP"), the Special Program Unit ("SPU"), a sex offender community treatment program, the Sexual Adjustment Treatment Program, anger management, stress management and personal development. *See Correctional Defendants' Exhibit E* at 2-3, 5 and 12. Parker also attended trade school where he obtained certification in commercial food service. *Id.* at 5. Furthermore, if eligible, Parker may still gain access to additional treatment through participation in the sexual offender program offered at the Bullock County Correctional Facility. *Correctional Defendants' Exhibit A - Affidavit of Ronald Cavanaugh* at 2.

To prevail in a suit based on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that prison personnel acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Prison officials may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the officials know that the inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). The mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985). Moreover, a difference of medical opinion does not constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

The undisputed evidentiary materials contained in the record demonstrate that Parker received sex offender treatment and treatment for anger and stress management. Although the mental health evaluation undertaken on May 9, 2000 indicated Parker exhibited traits indicative of a psychopathic personality, it did not reveal any mental illness requiring treatment other than that provided to Parker

as "[h]e was oriented to time, person, and place. . . . Thought processes appear[ed] . . . in tact and no overt indications of psychological malfunctioning were noted." *Correctional Defendants' Exhibit D - May 9, 2000 Mental Health Update* at 1.

Parker fails to present any evidence demonstrating that the defendants disregarded a substantial risk to his mental health. In light of the foregoing, the court concludes that the plaintiff has failed to establish deliberate indifference on the part of the defendants and summary judgment is therefore due to be granted in their favor on this claim.

To the extent Parker complains that the correctional defendants are violating his constitutional rights because he is not provided rehabilitative treatment, no relief is due to be granted. An inmate has no constitutionally protected interest in favorable prison programs as the failure to secure treatment in such programs does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995). Thus, this claim alleges "infringement of a legal interest which clearly does not exist" and is therefore frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *Neitzke*, 490 U.S. at 327.

## V. THE EXERCISE OF SUPPLEMENTAL JURISDICTION

In his complaint, Parker "seeks to bring pendent claims under state law against the defendants." *Plaintiff's Attachment to the Complaint* at 2. Review of these claims is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction. To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the

federal and state claims must derive from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). *See generally* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of this court's resolution of the federal claims presented by Parker, his pendent state claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

## VI. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED on the federal claims for relief presented by the plaintiff.

2. The plaintiff's supplemental state claims be dismissed without prejudice

3. This 42 U.S.C. § 1983 action be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before May 3, 2005, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections

will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of April, 2005.

       /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE